Madam Clerk, will you please call the first case? 7th Appeals Attorney, 12th Session, 7th Prospect Funding v. Keenan, Saulter & Saulter Tarver PC All right, I'd like for the attorneys representing the parties to step up to the podium with the appellant going first. I would like for you to state your name, tell the court who you represent and approximately how long your argument will take. Please step up. Good morning, counsel. Good morning, members of the panel. My name is Rachel Bassett. I represent the plaintiff, appellant, Prospect Funding Holdings, LLC. Today I'm requesting 12 minutes for my argument and 8 minutes for my rebuttal. Very good, Ms. Bassett. Counsel? Good morning. Good morning, Your Honor. Thank you very much. My name is Keenan, Saulter. I represent the defendant, appellees. I'm requesting 10 minutes for my argument, Your Honor. Very good. Thank you, sir. Ms. Bassett, you may proceed. Also at counsel's table is Attorney Curtis Tarver with me. Very good. Good morning, counsel. Ms. Bassett, you may proceed with your argument. Good morning, members of the panel. As I mentioned, I represent the plaintiff, appellant, Prospect Funding Holdings. This appeal stems from the grant to a motion to dismiss Prospect's first amended complaint. My client filed an action against the defendants to recover from the settlement that they negotiated for their client. Now, by way of background, Prospect purchased a non-recourse interest in the defendant's client's wrongful death litigation for which it should be repaid out of the settlement or judgment in that action. To the tune of, however, 100% interest compounded monthly? The compound interest monthly is 4%. The repayment would be the initial purchase amount plus the compounded interest. Right, and so the 4% interest compounded monthly translates to what a year? How much interest a year? I don't know off the top of my head the exact percentage per year. It's usurious, isn't it? I wouldn't say so. I would say that the parties in the contract agreed to that amount when they formulated the contract, which they are free to do under contract rights. So in that purchase agreement, the defendant's client delegated the... The defendants aren't a party to that purchase agreement, correct? They are not a party to that purchase agreement. They certified the purchase agreement. Right. You say, how is a certification a promise? The certification certified the responsibilities that the defendants had under the letter of direction, which was the letter of direction was between the defendant's client and the defendants, directing them to repay prospect for their non-recourse interest in the underlying litigation. But what consideration did they receive? You're contending that the certification is a contract, is that right? No, I'm contending that the letter of direction is governed by contract law. The letter of direction is a contract, you're saying? Correct. Okay, and it's a contract in which your client was not a party. My client was not a party, but my client was a third-party beneficiary to that contract. Where does it say that? Where is anything that says that your client was a third-party beneficiary? Under the attorney acknowledgment, it states that prospect was relying upon the letter of direction and the terms of the letter of direction in order to provide the funding to a defendant's client. But by certifying, it's not the same as agreeing to do something. Why would you call it a, rather than calling it a, you didn't call it a contract. It was just a certified. What's that mean? I don't understand how you can raise the level of that. Certify, I can certify something. I mean, certify means it's there. Sure. I think the confusion is the certification was attached to the purchase agreement itself. There was a separate document, the letter of direction, in which defendant's client directed the defendant to hold the settlement proceeds in its client trust account and to distribute them pursuant to the terms of the letter of direction. In that letter of direction, there is also what is titled an attorney acknowledgment, not a certification, wherein the defendant accepts the responsibility, states that it will honor the directions of its client, and further, it states that it acknowledges prospect relied upon those promises in order to issue funding to their client. Well, if the, your argument, though, is that failing to keep that money in the trust was a violation of the rules of professional conduct, correct? That is part of my argument. Okay. And is there any case that says you can sue on the basis of a violation of the rules of professional conduct? Professional negligence is a cause of action in Illinois. But it's not a cause of action under the rules of professional conduct, is it? Is that true? If you read the preamble to the rules of professional conduct in paragraph 20, a violation of a rule should not itself give rise to a cause of action against a lawyer, nor should it create any presumption in such a case that legal duty has been breached. That's in the rules of professional conduct. Sure, but we're alleging that in addition to violating the rules of conduct, they also violated the letter of direction in their application under that letter of direction. That's a separate argument, right? That relates to their professional responsibilities. But you can't sue under the professional responsibility. But it relates to professional obligations. It says that you can't use any presumption. I believe that the rules of professional conduct provide us with a guide of ethical obligations that the attorneys should be and are required to obey under their obligations as an attorney. Have you brought this to the attention of the ARDC? We have not at this point. However, the professional negligence is only one count of our First Amendment complaint. We also have four other counts. Well, what duty do they have to you? The duty they have to us is a duty under the letter of direction to hold the disputed funds in a client trust account in order to properly distribute them according to the priority claims. They didn't have that duty to you. They had that duty to the client. They had that duty to us as well because of the terms of the letter of direction and the attorney acknowledgement as a third-party beneficiary to that letter of direction. Do you have any case that says you're a third-party beneficiary? We don't have any case that specifically addresses this fact pattern because it is fairly unique. There is no case. I did the research, too. I don't find any case that has ever found in this funding litigation context that there's a third-party beneficiary. That's what your research has found, too. Not in relation to this exact fact situation. In this situation. However, the third-party beneficiary law... Well, not the law generally. I'm talking about with regard to funding. I have not found a case specifically in relation to funding. However, under the terms of the letter of direction, it states that Prospect relied upon their promises, which is a premise of a third-party beneficiary law under Illinois. But they relied on promises that under Minnesota law, in a case involving your client, a contract almost identical to this one, the court found that that's unenforceable. So how can we enforce here in Illinois whatever you want to describe these documents, the defendants entered into, when the state of Minnesota says they're unenforceable? Well, that actually brings me to my first point, in that the state of Minnesota has already adjudicated this specific purchase agreement and determined that it is valid and enforceable under Minnesota law. Well, if there's full faith and credit... Under full faith and credit. Then under full faith and credit, a case law now says unequivocally that this is an improper agreement. Right? There's a case out there that says that. No, there is no case law that says this purchase agreement is an improper agreement. It isn't? The case from Minnesota that involved your client? The Williams case that you're referring to, Your Honor? Yeah. That case involved, it's distinguishable from this case. First, that case involved litigation between prospect and the underlying tort plaintiff. And it is a circuit court opinion not relating to the exact purchase agreement that's involved in this case. The case I'm referring to, that is owed full faith and credit, is the underlying, or is the companion case in Minnesota that was brought by prospect against the defendant's client, Ms. Reithausen, in Hennepin County, Minnesota. In that case... I know what you're talking about. So you're telling me that a default, what's a default judgment mean? A default judgment is... Is it a decision on the merits? So... Is it a decision on the merits? A default judgment on its own is not a decision on the merits. Then how can it be full faith and credit on the merits, is what you're arguing? I'm glad you asked me that. Because the reason that this default judgment is not just your run-of-the-mill standard procedural default judgment is because of the Hennepin County Court taking under consideration sui sciente, the defense of champerty. If they wanted to just enter a procedural default judgment, they could have just done that under the... The judge said he didn't know. He said, I don't know. He said it could be, it could not be, right? That's what he said. The judge said it is unclear whether it's a viable claim. What's interesting about the case, too, is that the prospect versus Williams case was decided in Hennepin County two years prior to when this Hennepin County Court judge decided that it's not clear whether the champerty defense exists. But irrespective of that, the champerty defense is an affirmative defense that needs to be pled by Ms. Reithausen, who is a party to the agreement. It was not pled by her. In addition to that, the court found it also persuasive that Ms. Reithausen has admitted that these amounts are due and owing to prospect. And you've tried to collect from her. And nobody said you don't get full faith and credit when you're trying to collect from her. But they've been a party to that agreement, or that default judgment, were they? In fact, they were excluded specifically. So how can the full faith and credit be enforced against the defendant? The full faith and credit can be enforced against the defendants because full faith and credit is a broader law that states that a state has to give full faith and credit to the judicial proceedings of another state. The judicial proceedings in that Hennepin County Court case relating to this specific purchase agreement is that that purchase agreement was found to be valid and enforceable against Ms. Reithausen. I just told you that the judge said it could be, it could not be, he wasn't sure. He did not have a hearing on the merits. You can't say, can you, that he had a hearing on the merits. She didn't appear. There was nobody on the other side. But the issue was fully briefed by prospect. And fully considered by the judge. It's still a default judgment. It is a default judgment, but it's not just your run-of-the-mill default judgment. It's not just a procedural default judgment because they took on this issue on the merits regarding the Champerty defense and considered it and whether or not it was applicable in this case. But he didn't consider it. Does the court's order say that I considered it? The court's order says, maybe not those exact words, but the court's order says that this issue was briefed by prospect and was considered by the court. And ultimately, the court did not, was not inclined to enforce the doctrine of Champerty in this case and against this purchase agreement in order to bar default judgment against Ms. Reithausen. Let me ask you, Ms. Bassett, as far as the proceeds that Ms. Reithausen received from prospect, there was no limitation on her use of that money, right? That is correct. And for all we know, her lawyers could have used part of those proceeds to work up her case, right? No, we don't know. Because this case is decided on the pleadings, at the pleading stage, we have not done a discovery as to how these funds were used or even done an accounting of where these funds are, what happened to these funds. So I can't answer that question because I'm not sure. We don't have any discovery in this case, at this point, on how those funds were used. Ms. Reithausen was, there was no restriction under the agreement on how she could utilize these. However, typically, these types of funds are used for personal use as far as covering medical bills and living expenses and things of that nature during the pendency of a suit. And this wasn't the first loan counsel had arranged for his client, correct? That is correct. And there was another loan that, with the White House funding, and that loan was paid off partly with the proceeds of this loan, right? It appears that way from the reading of the agreement. Okay. Now, with respect to the full faith and credit, it was the obligation of the circuit court in Illinois to uphold the Minnesota-Hennepin County agreement or ruling on whether this agreement... You mean the judgment, don't you? To uphold the judgment. The judgment pertaining both to the Champerty defense and to the default judgment. Here, specifically, I'm referring to the judgment pertaining to whether the Champerty defense was applicable against this specific purchase agreement. But the court didn't really reach that issue. She didn't appear to enter the default judgment, correct? The court did because the court had to make a decision in order to enter the default judgment. Was that part of the judgment? Arguably, yes. Arguably. Was it included in the judgment? The court is limited to what's in the judgment. That's what it enforces. The court ultimately reached that the defense of Champerty is not applicable in this case because Ms. Reithausen failed to raise it. So that decision, there's an affirmative defense that must be raised. Ms. Reithausen failed to raise it. Because she did not appear. She was unable to. So you got a judgment against her. Correct. However, the court did not have to raise sua sponte the question of Champerty defense. They didn't raise it sua sponte, did they? I thought you said that your client briefed it. They did. And so what happened was, from my reading of the argument, about approximately a month before the decision was made, there was a hearing on the default judgment. At that time, the court itself raised the question of Champerty and whether this purchase agreement was Champerty under Minnesota law. And Prospect requested to file a supplemental brief regarding this issue so that the court could fully consider it. So that is the basis of saying that this was a default judgment on the merits of the Champerty defense. And that judgment should be entitled full faith and credit here in Illinois. No judgment is before us. The only thing before us is the case. The defendants were dismissed from that case. They had never raised these arguments. Correct? The defendants actually did raise this argument, but it was never decided on. They were dismissed from the case. Correct. They were dismissed from the case. So they're raising it now. There's no full faith and credit. That judgment is really not relevant to this case. It is relevant because it relates to the subject purchase agreement, which relates to this case. They weren't a party to that agreement. They weren't a part of that, but this purchase agreement still relates to the case. Okay, so it still relates to the case. So why is Judge Sherlock wrong then, if it relates to the case, that he should go and take a look under Minnesota law and see if Minnesota law would enforce this agreement? Since the judge, there's nobody on the other side, the judge made the decision just based without a hearing, it's just one-sided, and didn't have the benefit of both sides. And here, Judge Sherlock heard both sides to the issue and said under Minnesota law this would be unenforceable. Because there was a judgment in Hennepin County, Minnesota. That was a default judgment. We've established that. I don't think we have, because the... Let's assume we have. So what other argument do you have? So, just to touch on your point briefly, that judgment in Minnesota County, in Hennepin County, did reach the merits of whether the Champerty defense was adequate to this purchase agreement. Let's say we decided that it did not reach the merits. Okay, so moving from that, saying that that did not reach the merits, still the defendants are barred from bringing the Champerty defense because they were not parties to the agreement. Under Illinois law, it is clear that the defense of Champerty can only be raised between parties to an allegedly Champerty disagreement. And it cannot be used to defeat and refuse relief in a proceeding in which the Champerty disagreement merely relates. So, the circuit court further erred when it failed to consider whether the defendants even had standing to raise the Champerty defense here in Illinois. Now, the case relied upon by the circuit court here is the Prospect v. Williams case. And as I mentioned, that case involves two parties to the agreement. In that case, the Champerty defense was raised by a party to the purchase agreement. However, that's not what's happening here. As we've already established, the defendants are not a party to the purchase agreement and they should not be permitted to raise the Champerty defense under Illinois law. But on the other hand, you say where the client did not raise it on her own, we should give full faith and credit. But here, where it's being raised and being decided on the merits, we should consider that agreement. You want to consider the agreement no matter what. You want to enforce that agreement in Illinois and not let them litigate it. Is that right? You want to enforce the agreement. In order to win your case, you need the purchase agreement to be enforced. Is that correct? What I need is the letter of direction to be enforced. Because that is where the obligations of the defendant are to the prospect. And the letter of direction was a supplementary document to the purchase agreement. Correct. So if the purchase agreement under Minnesota law is found to be against public policy, why would that flow to the letter of direction? This purchase agreement has not been found to be against public policy in Minnesota law. But the letter of direction is part of the purchase agreement. The letter of direction relates to the purchase agreement, yes. But this specific purchase agreement has never been found to be void as chambered as against Minnesota or under Minnesota law by a Minnesota court. I thought we said it was. It was raised by the client in the case of Wilson. In Williams? That was a separate purchase agreement. This specific purchase agreement we're talking about now. No, no. It was a very similar agreement. You all can see there. I haven't read that purchase agreement, so I can't speak to similarities. You read the case, though. I did read the case. But that agreement, what is happening here is that the defendants have been allowed to assert a defense that they don't have standing to assert. The only parties who can assert that defense are the parties to the contract itself. That would be Ms. Reithausen. And she failed to do that, as noted by the Hennepin County Court case. Now, here defendants are being allowed to assert this defense in order to defeat the purchase agreement,  Now, here the alleged shamless agreement merely relates to the cause of action against the defendants. It is not, they are not parties to this specific purchase agreement. Now, additionally, another area where the circuit court erred in dismissing the plaintiff's amended complaint was when it failed to consider that the defendants had a professional obligation to hold the disputed funds. Here, the defendants had a professional duty to hold the settlement funds prior to the disbursement, and they committed an ethical violation when they disbursed the proceeds without holding them and ensuring that the dispute was fully resolved. Now, let me circle back to my full faith in credit argument. Here, the circuit court erred when it failed to give full faith in credit to the Minnesota judgment. Minnesota's conclusion that the purchase agreement was not chamfered and supports a valid and enforceable judgment should have been the end of the chamfered defense inquiry under the United States Constitution. Now, it just frustrates the purpose of the full faith in credit clause when the purchase agreement can be used to support a Minnesota judgment which is decided under the merits of Minnesota law and also be invalid to warrant a dismissal under Illinois law. Ms. Bassett, why don't you bring your argument to a conclusion? So, with that, I would also like to address briefly that the defendants failed to address either of these arguments in their response brief, and so it is our position that no further argument on these issues is necessary on these points as defendants have waived and conceded these points. So, what are you asking this court to do? So, we are asking this court to reverse and remand the circuit court's grant of the defendant's motion to dismiss prospects for a cemented complaint and remand it for further proceedings. Thank you. Thank you, Your Honors. Thank you. Mr. Salter. Thank you, Mr. Court. Counsel. Your Honor, the defendant appellees remain a bit confused as it relates to which parts of the contract the appellant has attempted to hold us to as opposed to, it seems like they're trying to take kind of two bites of the apple, that under Minnesota law, one issue has been decided and we weren't a part of that, but I guess because we were dismissed properly, we would argue. And then here, we are a part of the contract for aspects that are favorable to them, but separately, we're not able to raise all the fences available to a breach of contract. So, let me ask you, Mr. Salter, Ms. Reithausen is sued in Minnesota. You set her up with prospect funding, right? Put the two together. Initially, Ms. Reithausen. She wants to make a complaint to wedges. Initially, we went to Lighthouse, I believe, which is the agency previously I borrowed from. And then prospect comes into the, you put the two together. You have consulted with your client as you represent in the certification about the provisions of the agreement that she's entering into, right? Yes. Then it has a Minnesota choice of law provision. And choice of venue, Your Honor. And venue. And so your client is sued in Minnesota as you knew she would be when you gave her all the proceeds of the settlement and prospect got nothing, right? I would, should I answer that question? You knew she was going to be sued, right? Sure, that settlement was proceeding. And so they joined you too, you and your firm in Minnesota. You got yourself out because you weren't subject to the Minnesota court jurisdiction, but you did nothing on behalf of your client. You didn't raise the Champerty defense. You didn't do anything, right? So we did not represent Ms. Reithausen in the Hennepin County proceeding, Your Honor. I think that there's an argument that it would have been a conflict because we were both defendants in that litigation as to why we didn't raise any defenses on her behalf. So that was the thinking. I'm not suggesting that. So you're raising in this case the Champerty defense. Yes. That you didn't raise on her behalf in Minnesota. How would that be a conflict if you're both raising the Champerty defense? I think it could be construed that if both of us are defendants under the lawsuit in Minnesota, co-defendants, that we viewed it as a potential conflict of interest for us to represent her in that litigation. Okay. So, I mean, you get her $30,000 from Prospect. $25,000, Your Honor. $25,000. Sorry. $25,000. And there's no restriction in the agreement on how she can use that money. She can use it any way she wants. That's correct, Your Honor. And we don't know, based on the record, how she did use the funds. If she gave part of those funds to your firm to be able to hire experts so she could beef up her wrongful death claim, how is it fair that Prospect doesn't get a dying bag? Your Honor, I can represent to this Court that she did not give any. I'm going on what the record. We have nothing in the record about how she used those funds. Well, I would suggest to the Court that the premise of that question, I agree, that it does not contain in the record whether or not she provided any of those funds to our firm. Because the Court asked the question, I can tell you as an officer of the Court that it did not happen. But it's not in the record. I think that was the Court's initial point. But that's not what occurred. We spent close to $100,000 of our own money on this case. It's a wrongful death litigation involving a trucking accident. And you got those expenses back when the settlement was reached, right? Most of them, yes, Your Honor. Prospect doesn't get anything. Your Honor, I think that the challenge of the Prospect way of doing business, you asked the question earlier to counsel what the interest rate was. It's 420% a year. The other factor I think that should be considered is that Ms. Housen's proceeds were not simply her own. She was widowed and had four minor children. Each of those individual children was a specific claimant to the estate of Mr. Housen who was killed in this accident. I got all that. You undertook, when Prospect made this loan, you undertook to hold the proceeds of any settlement or judgment if there was a dispute between Ms. Wright Housen and Prospect about who should get the money. And your points are legitimate. Yes, she's a widow with four children. And should she have to pay 400-some percent to somebody who gave her $30,000 or $25,000 so she could live while her lawsuit was pending? Those are all good arguments. But you kind of acted as judge and jury and said, I'm just going to give all this money to my client and nothing to Prospect. How does your undertaking, which was a condition of Prospect's loan, not give Prospect some right of recovery against you, some cause of action? I think we have to consider the relationship between the parties. Prospect drafted this entire agreement. They attempted to bring us into the agreement, but there was no contractual relationship between the parties. I think counsel conceded that under questioning from the court. Well, she's not talking about the certification. She's talking about the letter of direction and the acknowledgement in which you say, this is what I'm going to do. I'm going to honor this irrevocable letter of direction. And I understand that Prospect is relying on my undertaking in making this loan. That's what you said. I think the relationship in that regard, Your Honor, is between the firm and its client. I don't believe there's any relationship, contractual or otherwise, between the firm and Prospect. So your undertaking to Prospect meant you could lie. You could say, I have no intention of ever giving Prospect any money. I'll sign whatever you want, but because there's no relationship between the lender and me, I don't have to honor it. I don't suggest that we could lie or that we did lie. I think what I am suggesting is that in order to contractually bind us or bind us in any way to a business relationship with Prospect, they have to provide some level of some bargain that's negotiated between the parties. They have to provide some benefit to us under contractual law. And there was nothing remotely close to that here. Well, how about Ms. Reithausen says to you, I can't go on not getting any recovery for my husband's death. We can't survive. And if I can't settle this case now, I've got to be able to settle the case now. And you say, well, gosh, if we can just work it out, if we can just hold on for another year or two, we can get you more money. And she says, I can't hold on for another year or two. How is that not consideration? When she says, I'll take whatever they're offering right now because I have to be able to move on with my life. Your Honor, I think that's in the context of the attorney-client relationship, not the relationship between Prospect and Salt Lake Harbor or myself. So I think that's the line of demarcation is that the scenario that the court paints is very common in personal injury cases, which I'm sure where you drove the example, but that is specifically between plaintiff's lawyer and client and has nothing to do with Prospect. Those things do come up routinely in our practice, but it's not a scenario where we receive anything as it relates to contractual provisions. If you set her up with Prospect, she comes to you, she's having a hard time. I'm going to assume you didn't get any of this money. She's having a hard time making ends meet. And so you say, well, I can set you up with somebody who can do this. And then as part of that arrangement, you undertake to hold any funds that she gets, pending resolution of any dispute between her and Prospect, and you just disregard that. I have a hard time with that. I understand, Your Honor. I think there are aspects of this that would fall under the attorney-client relationship, potentially privileged that I cannot speak to between the firm and Ms. Housen. But, you know, what I was going to say earlier about the nature of all the claimants, the children as well, there was a probate court order that actually governed the direction of these funds. And so I don't think there's any argument by the appellants that the children were subject to this agreement, for example. And they were rightfully entitled to proceeds from this lawsuit. I think that's an important factor to consider because they're never contemplated in any of the agreements. You didn't raise that argument in your brief, did you? I did not, Your Honor. Is there any record with regard to the probate matter? Forgive me, Your Honor. It should have been. It was part of this. The settlement agreement was incorporated by the probate court, which is the underlying. I would suggest that's the underlying document as it relates to. But it's the law division. If there's a settlement involving minors. Yes, ma'am. The law division approves the settlement. The probate court appoints a guardian ad litem for the minors. And when the settlement is approved by the law division, the probate court directs the distribution, right? Yes. It's not the probate court making the finding that the settlement is in the best interest of the minors. It's the law division. Yes, ma'am. I agree with that. Okay. I have a question for counsel. Yes, sir. Just considering the equitable part of this lawsuit, and I guess this court can sometimes act as a court of equity, and considering the fact that there's some young children here, was it fair for Prospect to pay that money and not even get their $25,000 back? I'm biased to answer that question. You've been biased. I'm talking about the equities here. Was it fair? I don't think it's equitable to charge a widow 420% interest. I didn't ask you to pay the interest. I said give them return their $25,000. I have a hard time deeming anything that Prospect does to be fair, to be perfectly frank, Your Honor, because I think they prey on people. And you directed your client to go and see them or negotiated this deal for her? We did not negotiate the deal for her. It was presented to her directly. But she reviewed it before she signed it, right? I believe she did, yes, Your Honor. Okay. Yes, sir. Please. Thank you. No, the other thing about it was really twofold is that, you know, it seems to be a moving target for the appellants as to whether or not we're parties to the contract. I think they try to cherry pick the parts of the contract they like, tie us to that but not to the rest of it. They don't want to settle a complete defense. But we would argue that we are not parties to this contract. There's no bargain, there's no mutual assent, and there's no consideration. And Ms. Bassett has said now, she concedes, you're not a party to the loan agreement. And for that reason, you don't have standing to raise a Champerty defense. I don't believe she was able to cite any authority to support that position, Your Honor. Actually, there are cases cited in the briefs that it's only a party to the contract that can raise Champerty as a defense. Well, I think, as an initial matter, the contract itself was deemed to be invalid by Minnesota law, by a Minnesota court sitting in competent jurisdiction, using their trust of law provision, using their choice of venue provision. A Minnesota court sitting in the exact same position as Judge Sherlock said, this agreement is invalid per public policy and because of Champerty. So I think that would cover the entire agreement. When I read that decision, I didn't see any aspect of it that said the letter of direction was exacted out. Yeah, and so what you're saying is because you have determined that the agreement is Champerty's, you can disregard the undertaking you made to prospect to hold the funds until the parties litigated that. I think Minnesota law makes it clear that it's an invalid agreement. But that's my question. You were entitled to decide that and disregard the undertaking you made to prospect to hold those funds pending the outcome of that dispute. Well, if it's invalid, Your Honor, I don't know how we could have a responsibility under an invalid agreement that's been a part of Minnesota law for nearly 100 years. So you knew the agreement was invalid when you told your client to sign it? I don't think there's anything in the record that says we told our client to sign it. You consulted your client. I mean, your certification says you have talked to your client about the agreement. You've reviewed the terms and conditions and agreement and explained them to Ms. Reithausen. And so you told her, you must have told her because it's been a part of Minnesota law for 100 years that you don't have to honor this agreement. Just sign it, get the money, you don't have to honor it. So I would confess that I'm not suggesting I was well-versed on Minnesota law prior to prospecting in the picture, but I think the law was well-established with my knowledge notwithstanding. As to the nature of this agreement, this exact, you know, I think the court asked counsel whether or not this agreement was the same in the Williams case, and it was nearly identical based on my reading of it. I mean, it has different names in it, but it's an identical reading. So I agree with the court that our firm was not necessarily well-versed in Minnesota law  I would also, to answer the court's question about, you know, the terms of the agreement, this is all prospect. This is a one-sided agreement where they drafted everything right down to the venue choice. They initially brought a case against us, as the court is aware, in Hennepin County, Minnesota, which is their choice of venue, their choice of law. This was completely one-sided. There was no ability to negotiate. I'm with you. But how does that translate into them not getting even $25,000 back that they gave us? Because the court in the jurisdiction that they chose said it's invalid. When I read that decision, I didn't see where it said that aspects of it were valid, they should get the principal back but not the interest. It said the agreements aren't valid. And really, you know, our argument is relatively straightforward. On the breach of contract side, Ms. Bassett seems like indicated that they were drawing that part of the argument. So really, we rely on the Minnesota court's decision, A, in the Williams case, that these agreements are invalid because of the ridiculous interest rates, 420% a year. And then secondarily, we were initially sued in Minnesota and dismissed from that case. Doesn't the letter of direction depend upon the viability of the purchase agreement? I think it does. And what's the basis for you making that argument? I think they refer to each other. So I would argue they're reciprocal in that they language from each agreement or each document, I'll call them documents, refer to the other. And it seems as if the parties to the original agreement rely on the letter of direction. So I think that if one is, I think my argument earlier, if one is invalid, then the letter of direction is also invalid. Anything further? No. Thank you very much, Your Honor. All right. So you're asking the court? I'm asking the court to uphold the circuit court's ruling that the dismissing the complaint, the person in the complaint is guilty. Thank you, Mr. Soltz. Thank you very much for that. Ms. Bassett. Welcome to the panel. I first want to address the point asking the question about whether the probate court proceedings were in the record. And just so we're clear, none of the probate proceedings are in the record. They've never been mentioned in any of the underlying pleadings. And so you won't see that in the record before you today. Irrespective of that, under the agreement, under the purchase agreement, Prospect had a priority claim in it that the funds of the settlement needed to be distributed to repay Prospect for its interest in the claim prior to being distributed to Ms. Reithausen and any other claimants. So I think that resolves the issue of the order of distribution. This was a priority claim that should have been distributed prior to going to Ms. Reithausen and her children. Now, counsel stated that he is not a party to the agreement, which as we've discussed, I agree with. And because of that, he does not have standing to raise the Champery defense. Now, counsel alluded that I do not have any authority to state that position. And as Justice Mason pointed out, I not only cited case law from Illinois, but also from Minnesota and various other states around the country regarding this principle that only parties to a Champery's contract have standing to assert this defense. But although he is not a party to the purchase agreement, under your theory, he is a party to supplemental documents that enforce that purchase agreement, correct? That dictate the repayment of the purchase agreement. And that repayment is part and parcel of the purchase agreement. The repayment is part of the purchase agreement, yes. So there wouldn't be the supplemental agreements if there hadn't been a purchase agreement. Correct. Okay. So it's all one ball of wax. It's not. Well, but you said it is all one ball of wax because if you don't have the purchase agreement, you don't have the letter of direction and so forth. So in order to, it's as if, I guess maybe analogous to have a building contract and then you have subs. You know, the subs do their own thing, but there wouldn't be any subs if there wasn't the construction contract with the general. So here, if there is no, to use my analogy, general contract, that breaks down, you don't need the subs anymore. So if the question, you're saying he can't raise a question of Champerty under the usual cases, but this is not your usual case in that this, as you've discussed, and this hasn't had much litigation, that is the funding litigation industry, is a relatively new concept in the United States. And there aren't a lot of cases across the country on it. So this is, to some extent, a question of first impression, apparently, with regard to whether in this situation, with regard to what's going on here, the law might look at it a little differently. Well, the reason why it should not be looked at differently is because the Champerty defense wasn't asserted against the letter of direction itself. There's been no objection raised to the validity of the letter of direction. Instead, the defense was asserted against the purchase agreement. And in order to assert that defense, they must be a party to that agreement. They are not a party to the agreement by their own admission and in looking at the agreement itself. And so, therefore, they do not have standing to raise that defense, and the defense should fail. Well, again, you're looking at cases under different scenarios than the one we have here. So I'm just saying that it might be necessary to look at something different. They're different scenarios, but they're analogous. Specifically, in the Oil v. Martin case, it involves a constructive oil lease. Now, the contract that they're discussing being void in Champerty, the attorney for the individual that was a party to that oil lease is the one that's alleging that it's void in Champerty under Illinois law. And the court declines to extend that. So here we have similar facts in that we, again, have an attorney alleging that a contract that his client entered into is void in Champerty under Minnesota law. And the court in Oil v. Martin declined to allow the attorney to assert that affirmative defense. Now, along with that, the Minnesota case in Penican County, the Williams case, is a circuit court case. It is one case, and while it is clear as to that specific agreement, it does not apply to every agreement across the board. Now, the Minnesota court case doesn't make it clear that these types of contracts are void as a matter of right. In fact, it states in that case, Mr. Williams, or Ms. Williams, I should say, raised this as an affirmative defense under a motion for summary judgment. It must be pled and it must be adjudicated in order for the purchase agreement to be deemed void in Champerty. Here, the affirmative defense of Champerty was never raised by Ms. Reithausen, and thus this purchase agreement should be valid and enforceable under Minnesota law, and that judgment was entitled to full faith and credit here in Illinois. And for those reasons, we request again that you reverse and remand the circuit court's grant of the motion to dismiss. Prospects for a submitted complaint. Thank you, Counsel. Ms. Bassett, Mr. Salter, the court would like to thank you. You can be seated. The court would like to thank you for your briefs and your arguments. This matter will be taken under advisement, and this court stands in recess.